UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANGEL REYES AGUILERA,

        Petitioner,

    v.                                     Case No. 2:26-cv-1688-KCD-NPM

WARDEN, FLORIDA SO2FT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

        Respondents.

_____/

## ORDER

Petitioner Angel Reyes-Aguilera filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that his continued custody violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). This is Aguilera's second petition. The prior case was denied because, although the presumptively reasonable six-month period set forth in *Zadvydas* had passed, Aguilera had refused removal to Mexico, so the time was tolled. *See Reyes-Aguilera v. Secretary of DHS*, No. 2:26-cv-1079-KCD-NPM, 2026 WL 1223571 (M.D. Fla. May 5, 2026). The Court concluded that Aguilera could refile his petition if his removal is unimpeded and shows that there is no significant likelihood of removal. *Id.* at *4. Aguilera now states that Mexico denied him

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

entry due to his health. (Doc. 1 at 7.) The Government opposes the petition. (Doc. 5.) For the reasons below, the petition is **GRANTED**.

## I. Background

Aguilera illegally entered the United States in 2008. He was ordered removed in 2012. He came on immigration enforcement's radar after completing a state sentence for sexual battery with a deadly weapon. ICE took custody of him on October 12, 2025. ICE states that Aguilera has twice been transported to the El Paso port of entry for removal to Mexico, but failed to comply. (*See* Doc. 5-1 (February 5, 2026, and February 18, 2026)).

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a [Due Process] claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also

3

must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Aguilera satisfies the initial temporal requirement. ICE took him into custody eight months ago. As a result, *Zadvydas*'s burden-shifting framework applies. Aguilera has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. He has received no indication that ICE will remove him, as they have provided no travel document or a confirmed removal date. (Doc. 1 at 7-8.) Coupled with his Cuban citizenship and prior failed attempts at removal to Mexico, those facts are enough.

The burden thus shifts to the Government to rebut Aguilera's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Aguilera will be removed in the near future. Instead, Aguilera states Mexico won't take him because of his health, something the Government does nothing to address or rebut. Because the Government offers little to suggest that his removal to Mexico, or anywhere else, is more likely now than it was decades ago, Aguilera must be released.

It is easy to see why this outcome might cause unease. Aguilera is a convicted criminal. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for nearly

twenty years without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Aguilera will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his order of supervision. To the extent Aguilera's petition raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Angel Reyes Aguilera from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on June 12, 2026.

Kyle C. Dudek
United States District Judge

6